

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

HARRIS ENTERPRISES, INC. and,    *
SPEED AVIATION, INC.,            *
                                 *
            Plaintiffs,          *
                                 *
    v.                           *        CIV. NO. SA-10-CA-573-FB
                                 *
UNITED STATES DEPARTMENT OF      *
DEFENSE and UNITED STATES        *
DEPARTMENT OF the AIR FORCE,     *
                                 *
            Defendants.          *

## ORDER

Before the Court are plaintiffs', Harris Enterprises, Inc. and

Speed Aviation, Inc.'s, ("HESA")[1], Application for Preliminary

Injunction and Unopposed Motion for Hearing (docket nos. 5 and 6);

and defendants', the United States Department of Defense ("DoD")

and the United States Department of the Air Force's ("Air Force"),

Motion to Dismiss for Lack of Jurisdiction (docket nos. 7 and 12).

Although counsel for HESA directs the Court's attention to **Vero

Technical Support, Inc. v. United States Dep't of Def.**, No. 10-575C

(Judge Marian Blank Horn), Docket No. 31 (September 29, 2010), a

recent opinion by the Court of Federal Claims, and advises that

this opinion should "settle any jurisdictional concerns of this

Court," the Court notes the language relied upon by counsel in that

opinion, that "Tucker Act jurisdiction to challenge the insourcing

policy decisions is not immediately apparent", is dicta. (Docket

---

[1]  Hereinafter, the Court refers to HESA or plaintiff in the singular.

No. 14, Advisory, pgs. 1-2). In fact, the opinion clearly states that "this Order . . . does not address the propriety of jurisdiction in the Court of Federal Claims, and has not fully explored the issue at this time"; therefore, it is not controlling upon this Court. Consequently, and notwithstanding counsel's advisory, the Court concludes the threshold issue of its subject matter jurisdiction has not, in fact, been settled, and in consideration of the motion, response and applicable law, the Court finds defendants' Motion to Dismiss (Docket No. 7) has merit and should be granted. Additionally, the Court finds HESA's Application for Preliminary Injunction (docket no. 5), and Motion for Hearing (docket no. 6) should be denied.

## BACKGROUND

George Sigler started both Speed Aviation, Inc. and Harris Enterprises, Inc. in 1997. **Docket No. 5**, Application for Temporary Injunction, Affidavit of George Sigler, pg. 2. In 2003, the two companies formed a joint venture to provide instructors to train fighter pilots utilizing T-1 aircraft at Pensacola Naval Air Station, Florida pursuant to defense Contract No. FA3002-04-C-0005. *Id.* The joint venture, HESA, has operated pursuant to this contract since 2003. *Id.* In May of 2010, defendants notified HESA that upon the expiration of the contract on December 31, 2010, the government would no longer contract these services out but instead, would begin insourcing these services.[2] *Id.* at 3-4.

_____

[2] HESA was initially awarded a defense contract in December of 2003, along with six, one-year option periods. (Docket no. 1, exh. 1).

2

On July 7, 2010, HESA filed suit in federal district court pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, alleging that the defendants' insourcing decision, and the findings and conclusions that allegedly support this decision, are agency actions that violate 10 U.S.C. § 129a (providing that Secretary of Defense "shall use the least costly form of personnel consistent with military requirements and other needs of the Department"), and 10 U.S.C. § 2463 (providing guidelines and procedures for use of civilian employees to perform Department of Defense functions). **Docket No. 1**, Plaintiff's Orig. Compl., pg. 1-2. More specifically, HESA maintains that defendants misclassified the pilots as GS-12s rather than GS-13s and then compared these costs against HESA's GS-13 cost of performance, resulting in the government, rather than HESA, being the "low cost provider." ***Id.*** at 2. HESA argues a GS-12 classification for the same scope of work HESA currently performs is specifically precluded by defendants' own grade classification documents and orders and further, that "corrections to the cost analysis that account for defendants' failure to apply and/or correctly apply their own procedures are more than sufficient to reverse the cost differential in HESA's favor," thereby rendering the insourcing unlawful. ***Id.*** at 18.

HESA further alleged that "[d]efendants are not waiting until December 31, 2010 to implement [the decision to insource]" but

3

rather, "are gradually poaching HESA's pilots and have been conducting job interviews with them since June 21." **Docket No. 1**, pg. 5. Consequently, HESA also filed an Application for Preliminary Injunction seeking to set aside the Air Force's insourcing decision and enjoin defendants from carrying out their final decision to insource the scope of work involved in Contract No. FA3002-04-C-0005, and currently being performed by HESA. **Docket No. 5,** App. for Preliminary Injunction. Defendants in turn moved to dismiss the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. **Docket No. 7**, Defendants' Motion to Dismiss.

## APPLICABLE LAW

It is well settled the United States, and its agencies, as sovereign, are immune from suit unless this immunity is expressly waived. *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Any suit against the United States that does not fall within an express waiver of its sovereign immunity must be dismissed for lack of jurisdiction. *United States v. Dalm*, 494 U.S. 596, 608 (1990). The plaintiff carries the burden of demonstrating by a preponderance of the evidence that jurisdiction exists. *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

4

Here plaintiff has filed suit pursuant to the Administrative Procedure Act, which waives sovereign immunity and confers jurisdiction on federal district courts with respect to nonmonetary claims, providing that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." **5 U.S.C. § 702**. However, the APA waives sovereign immunity only if there is no other adequate remedy. ***Id.; Telecare Corp. v. Leavitt***, 409 F.3d 1345, 1349 (Fed. Cir. 2005).

Effective January 1, 2001, exclusive jurisdiction over bid protests was conferred on the United States Court of Federal Claims ("CFC") pursuant to 28 U.S.C.A. **§ 1491**, also referred to as "The Tucker Act."[3] **28 U.S.C. § 1491**, as amended by the Administrative Disputes Resolution Act of 1996, Pub. L. No. 104-320, 110 Stat. 3870, 3875 (Oct. 19, 1996)("ADRA"). The Act provides, in relevant part, that the CFC:

> . . . shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

**28 U.S.C. § 1491(b)(1); *see also OTI Am., Inc. v. United States***, 68

---

[3]  Initially, the statute provided both the federal district courts and the CFC with jurisdiction over government contract and procurement disputes; however, the district courts' jurisdiction was terminated as of December 31, 2000 pursuant to a sunset provision. ***See* 28 U.S.C. § 1491;*Labat-Anderson, Inc. v. United States***, 346 F.Supp.2d 145, 150 (D.D.C. 2004).

Fed. Cl. 108, 113 (Fed. Cl. 2005)(citing **Labat-Anderson, Inc. v. United States**, 346 F. Supp. 2d 145, 148-54 (D.D.C. 2004)). Pursuant to the ADRA, the court may "award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." **28 U.S.C. § 1491(b)(2).**

Like the ADRA, the Contract Disputes Act also confers exclusive jurisdiction in the CFC but pertains to disputes relating to an express or implied contract for goods or services entered into between an executive agency and an independent contractor. **28 U.S.C. § 1346(a)(2)**, as governed by the Contract Disputes Act of 1978, **41 U.S.C. §§ 601 et seq. ("CDA"); see also Griffy's Landscape Maint. LLC v. United States**, 51 Fed. Cl. 667, 672(Fed. Cl. 2001). However, as a prerequisite to filing suit, the CDA requires that "[a]ll claims by a contractor against the government relating to a contract . . . be in writing and . . . be submitted to the contracting officer for a decision." **41 U.S.C. § 605(a); see also Laudes Corp. v. United States**, 86 Fed. Cl. 152, 161 (Fed. Cl. 2009) (plaintiff may not advance a CDA claim in this Court until a contracting officer has reached a final decision)(citing **Bath Iron Works, Corp. v. United States**, 20 F.3d 1567, 1578 (Fed. Cir. 1994), *rehearing en banc denied,* (2001)). Thus, to the extent a claim falls within the ambit of the ADRA or the CDA, the CFC, and not the district court, has exclusive jurisdiction.

## I.   THE ADRA

*a. Procurement*

In seeking to retain jurisdiction in this Court, HESA contends its claim does not fall within the scope of the ADRA because there was no "procurement" pursuant to 28 U.S.C. § 1491(b)(1), which provides that the CFC "shall have jurisdiction to render judgment on an action by an interested party objecting to . . . any alleged violation of statute or regulation *in connection with a procurement or a proposed procurement.*" (Emphasis added.)  In enacting the ADRA in 1996, and adding subsection (b) to the Tucker Act, Congress sought to grant jurisdiction "over the full range of procurement protest cases." **OTI Am., Inc.**, 68 Fed. Cl. at 114 (quoting H.R. CONF. REP. 104-841, at 10 (1996)).  As such, "procurement" has been defined as including "all stages of the process of acquiring property or services, *beginning with the process for determining a need* for property or services and ending with contract completion and closeout." **Distributed Solutions, Inc. v. United States**, 539 F.3d 1340, 1345 (Fed. Cir. 2008)(emphasis added).  Further the phrase "*in connection with a procurement or proposed procurement*" would appear to further enlarge the range of claims falling within the scope of the ADRA and thereby, the CFC's exclusive jurisdiction.  **See Labat-Anderson, Inc.**, 346 F. Supp. 2d at 151; **see also RAMCOR Serv. Grp., Inc. v. United States**, 185 F.3d 1286,

1289 (Fed. Cir. 1999). Thus "[a]s long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction." *RAMCOR Serv. Grp., Inc.*, 185 F.3d at 1289.

Here, HESA alleges that defendants' "failure to apply and/or correctly apply their own procedures" rendered the defendants' decision to insource unlawful. While insourcing in and of itself may not involve the procurement of goods or services, a decision whether or not to insource involves the process for determining a need for acquisition of property or services and, consequently, involves a "procurement" or a "proposed procurement" regardless of whether property or services are actually procured. *See Distributed Solutions, Inc.*, 539 F.3d at 1342 ("[s]tatute does not require an actual procurement" but rather "explicitly contemplates the ability to protest these kinds of pre-procurement decisions by vesting jurisdiction in the Court of Federal Claims over 'proposed procurements'").

Further, HESA has alleged defendants violated 10 U.S.C. § 129a and 10 U.S.C. § 2463, as well as regulations promulgated pursuant to those statutes, in opting to insource rather than renew or recompete the existing contract. These statutes arise in "connection with a procurement or proposed procurement" in that they pertain to the process for determining a need for acquisition of property or services. More specifically, 10 U.S.C. § 129a provides that "[t]he Secretary of Defense shall use the least

costly form of personnel consistent with military requirements and other needs of the Department." The statute goes on to require consideration of the advantages in converting from one form of personnel--military, civilian, or private contract--to another for the performance of a specified job, i.e. services, as well as "a complete justification for converting from one form of personnel to another." **10 U.S.C. § 129a(1),(2)**. Similarly, 10 U.S.C. § 2463 pertains to guidelines and procedures in using civilian employees to perform DoD functions, or services, and provides, in part, that special consideration be given to "certain functions" while other specified functions be excluded from "competitions".

Additionally, the Under Secretary of Defense for Personnel and Readiness is required by statute to devise guidelines to ensure that consideration be given to DoD employees. **10 U.S.C. § 2463(a)(1).** These guidelines require that a cost analysis be conducted pursuant to 10 U.S.C. § 129a to "determine whether DoD civilian employees or the private sector would be the most cost effective provider." **Docket No. 1**, exh. 4, Memorandum from Deputy Secretary of Defense dated May 28, 2009, pg. 10. Further, in accordance with 10 U.S.C. § 2463, the following three step procedure was promulgated and is to be utilized when converting currently contracted services or functions to DoD civilian or military performance: 1) the manpower and requirements of the work is to be validated using standard methods to account for the full cost of manpower; 2) a cost analysis is to be conducted that makes

9

"like comparisons" between contractor and government costs; and 3) "the low cost provider" is to be selected and if the "low cost provider" is the contractor, the contract is to be re-competed or option years exercised, as appropriate. *Id.*

Although HESA seeks to characterize its complaint as strictly one challenging agency action in accordance with 5 U.S.C. § 702, HESA's complaint, alleging defendants violated a statute (i.e. 10 U.S.C. § 129a and 10 U.S.C. § 2463) in rendering their decision to insource services, triggers the CFC's exclusive jurisdiction pursuant to the ADRA which provides that the CFC "shall have jurisdiction to render judgment" with respect to an action involving "any alleged violation of statute or regulation *in connection with a procurement or a proposed procurement.*" **28 U.S.C. § 1491**(emphasis added); *see also Distributed Solutions, Inc.*, 539 F.3d at 1346; *RAMCOR Serv. Grp., Inc.*, 185 F.3d at 1289.

Further, to the extent HESA complains that "defendants' insourcing decision failed to make 'like comparisons' of cost or otherwise account for the 'full cost of manpower' required by the procedures," thereby denying HESA the ability to be considered for an option or even to compete for the work, HESA essentially alleges the Air Force procured services "through a process that should have been the subject of competition." *CCL, Inc. v. United States*, 39 Fed. Cl. 780, 789 (Fed. Cl. 1997); *see also Savantage Fin. Servs., Inc. v. United States*, 81 Fed.Cl. 300, 305 (Fed. Cl. 2008)(jurisdiction exists where the agency's failure to procure

10

"through a competitive process is exactly what [plaintiff] is protesting"). In either case, HESA's claims fall within the CFC's exclusive jurisdiction.

b. *Interested Party*

HESA also maintains that as an "incumbent contractor," it lacks standing under the ADRA. More specifically HESA argues that it is not an "interested party" pursuant to 28 U.S.C. § 1491(b)(1), which provides that an "interested party" may object "to . . . any alleged violation of statute or regulation in connection with a procurement or proposed procurement." For purposes of standing, an "interested party" is defined as a "prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." **31 U.S.C. § 3551(2)(A)**; *Distributed Solutions, Inc.*, 539 F.3d at 1344. Prejudice or injury to the protestor's direct economic interest is generally shown by demonstrating there was a "substantial chance" the protestor would have received the contract but for the alleged error in the procurement process. *Info. Tech. & Applications v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). However, in a pre-award solicitation challenge, standing is evaluated by determining whether the protester can demonstrate "a non-trivial competitive injury which can be redressed by judicial relief" since "it is difficult for a prospective bidder to make the normal showing of prejudice because 'there have been neither bid/offers,

11

nor a contract award'". ***Weeks Marine, Inc. v. United States***, 575 F.3d 1352, 1362 (Fed. Cir. 2009).

While HESA complains it has been denied the ability to recompete the contract, arguably conceding it is a "prospective bidder" prepared to bid had it been permitted to do so, it nevertheless maintains that "the predicate for 'interested party' status is a contract award process" which HESA argues is absent in the present case. Such a narrow interpretation would appear to undermine Congress' stated purpose to grant jurisdiction "over the full range of procurement protest cases" which includes cases involving "all stages of the process of acquiring property or services, *beginning with the process for determining a need* for property or services." ***See Distributed Solutions, Inc.***, 539 F.3d at 1345 (emphasis added).

In ***Distributed Solutions, Inc.***, vendors, who had responded to the government's Request for Information ("RFI") but were advised that the government had "decided to pursue alternative courses of action," sued after learning that subcontracts had been awarded to other vendors by SRA, a prime contractor that the government had essentially tasked with awarding the work in question. ***Distributed Solutions, Inc.***, 539 F.3d at 1344-5. The trial court found that SRA was not a purchasing agent for the government and therefore, the subcontracts awarded were not subject to a bid protest. ***Id.***

On appeal, the vendors maintained they were not contesting the award of the subcontracts but instead, "the government's decision to task SRA with awarding subcontracts for the purchase of software instead of procuring the software itself through a direct competitive process." *Id.* at 1344. The Federal Circuit considered whether the vendors had met the jurisdictional requirements of the Tucker Act and found the vendors were interested parties in that they were actual or prospective bidders or offerors that had a direct economic interest in the procurement or proposed procurement. *Id.* at 1344-45. While arguably a RFI was issued, the government made it clear in issuing the RFI that the RFI was for "marketing research purposes only" and that it would "not result in a contract award." *Id.* Despite the fact that no solicitation was issued or was ever intended to be issued, the court found the vendors were "interested parties" based on the assumption the RFI was part of the challenged procurement process, as well as the fact the vendors had submitted qualifying proposals and were prepared to submit bids pursuant to the RFI, and were deprived of the opportunity to compete. *Distributed Solutions, Inc.*, 539 F.3d at 1344-5.

In the present case, although an RFI was not issued, the government conducted a cost analysis pursuant to 10 U.S.C. § 129a to determine whether or not to procure services, ultimately opting to terminate procuring services from HESA and commence insourcing;

arguably, this cost analysis, much like the RFI in ***Distributed Solutions, Inc***. that was solely for market research purposes with no intent to award a contract, pertains to the beginning of the procurement process and, therefore, is part of the challenged procurement process. ***See id.*** at 1345; ***see also Weeks Marine, Inc.***, 575 F.3d 1352 (involving a pre-award protest challenging the agency's decision to use task order contracts rather than sealed bidding procedures).

In a case more factually similar to the present case, an incumbent contractor sued the government after being notified the government intended to insource the services once the contract expired. ***LABAT-Anderson, Inc.***, 65 Fed. Cl. 570, 572 (Fed. Cl. 2005). The contractor alleged the government's decision to insource these services without first resoliciting the contract violated several laws, including DoD procurement regulations. ***Id.*** at 574. Initially, the contractor brought suit in the district court; however, the case was transferred to the CFC after the district court determined it lacked subject matter jurisdiction because the case was a procurement matter falling within the CFC's exclusive jurisdiction. ***LABAT-Anderson, Inc.***, 65 Fed. Cl. at 573-4. Nevertheless, after the case was transferred, the defendant filed a motion to dismiss, maintaining the contractor lacked standing pursuant to the ADRA because an actual procurement was not pending. ***Id.*** at 575.

The CFC found that the contractor did have standing, notwithstanding the fact that the contractor was not protesting a recent or ongoing solicitation. *Id*. The court reasoned that as the incumbent, the contractor was capable of providing the needed services and supplies, was prepared to bid if resolicitation was ordered, and had a direct economic interest. *Id*. Consequently, the court concluded that the contractor was an interested party within the meaning of section 1491(b)(1). *Id*. at 576.

Similarly, in the present case, HESA, the incumbent contractor, initially submitted a bid and was awarded the contract. Although HESA is not protesting a recent or ongoing solicitation, as the incumbent contractor, it is capable of providing the services and was prepared to bid on the contract again had HESA been found to be the low cost provider and a decision made to recompete the contract. Moreover, in arguing that it, rather than the defendants, is the "low cost provider" and that it was denied the opportunity to either be awarded an option to extend the contract or bid on the contract because of defendants' misapplication of its procedures, HESA establishes "a non-trivial competitive injury which can be redressed by judicial relief."[4] *Info. Tech. & Applications*, 316 F.3d at 1319; *see also Weeks*

---

[4] Additionally, George Sigler, who has been awarded approximately $13,000,000 annually on this contract since 2003, admits that HESA will likely go out of business if it loses this contract. *See* **Docket No. 5**, Application for Temporary Injunction, Affidavit of George Sigler, pg. 7.

*Marine, Inc.*, 575 F.3d 1361.   As such, HESA possesses a direct economic interest in the government's decision to forego the direct competitive process of procurement and is an interested party despite the fact an actual procurement is not pending.   **See Distributed Solutions, Inc.**, 539 F.3d at 1345.

## II.   Contracts Dispute Act

Alternatively, defendants argue that HESA's claims are contractual in nature and therefore, fall within the scope of the CDA, which confers exclusive jurisdiction in the CFC, and encompasses not only causes of action that arise under contract law but also, disputes that "relate[] to a contract." **41 U.S.C.A. § 605.**   In ascertaining whether the CDA's exclusive jurisdictional bar applies, the Court must determine the true characterization of this action, rather than relying solely on HESA's denial that its claims are contractual; in reaching this determination, the court considers the source of the rights at stake and the nature of the remedy requested. **See Info. Sys. & Networks Corp. v. United States Dep't of Health and Human Servs.**, 970 F. Supp. 1, 4-5 (D.D.C. 1997)(citing **Ingersoll-Rand Co. v. United States**, 780 F.2d 74, 79 (D.C.Cir.1985)).   Further, in considering the source of the rights at stake, the Court looks to factors such as: "(1) whether the dispute could be conceived of entirely within the terms of the contract, (2) whether the issues raised were within the unique expertise of the Court of Claims, and (3) whether the claim was really one of a 'frustrated bidder.'" **Id**.

## A. Source of the Rights At Stake

*1. Can Dispute Be Conceived Entirely Within Terms of Contract?*

HESA vehemently disputes the CDA applies, maintaining that "this case is not founded on any contractual provision at all" and "is not a government contract case." However, HESA was initially awarded a defense contract in December of 2003, along with six, one-year option periods, and following the defendants' decision to insource the scope of work performed by HESA pursuant to this contract, HESA filed suit alleging the following in its complaint: "*Incumbent contractors* in HESA's position are afforded protections from arbitrary and capricious insourcing by 10 U.S.C. 129a requirements . . . ." **Docket No. 1**, Plaintiff's Original Compl., pg. 10 (emphasis added); "HESA also falls within the 'zone of interests' protected by the 10 U.S.C. § 2463 because its legislative history demonstrates intent to protect the *incumbent contractor* from standardless insourcing decisions. . . ." *Id.* (emphasis added); and "[b]ut for their unlawful decision to insource HESA's work, Defendants would have to consider *extending the option to HESA on the merits of its current performance, or re-competing the contract.*" *Id.* at 8 (emphasis added). Further, HESA alleges that "the DoD's decision to insource the scope of work comprising Plaintiff's contract has the practical consequence of not only denying HESA its contractual right to consideration for an option year, but the legal consequence of. . . denying HESA any

opportunity to compete for or perform the work, forever." **Id.**
Arguably, these allegations arise under contract law or "relate[]
to a contract." **41 U.S.C.A. § 605**.

In a factually similar case, a supplier sued the government
pursuant to the APA after the government refused to extend an
option contract, alleging the government failed to follow its own
regulations. **See Info. Sys. & Networks Corp.**, 970 F. Supp. at 2-3.
The supplier filed suit in district court, and the government moved
to dismiss the complaint for lack of subject matter jurisdiction,
maintaining the government's decision whether or not to exercise an
option to the contract was essentially a contractual issue governed
exclusively by the CDA. **Id.** at 3-4. Like HESA, the supplier
argued it was not suing pursuant to the contract but rather, was
alleging the government had failed to follow its own regulations
for continuing or terminating the contract which resulted in the
government's failure to exercise the option to renew. **Id.**

The court, applying the factors set out in **Ingersoll-Rand**,
concluded the supplier's case was essentially contractual in
nature. **Info. Sys. & Networks Corp.**, 970 F. Supp. at 5-6. The
court noted initially that "[t]he core of plaintiff's . . . claim
[was] the government's failure to extend it another option, a clear
contractual issue--especially under FAR 52.217-9, the federal
option clause." **Id**. at 5. Thus, notwithstanding the supplier's
attempt to "make this case about a different regulation," the court

found plaintiff's true complaint was essentially one of bad faith termination which was contractual in nature. **Id.**

Similarly, in the present case, although HESA seeks to cast this claim as one within the umbrella of the APA, it essentially "arises under or relat[es] to" the DoD's decision not to extend HESA an option which is a contractual issue subject to the CDA and within the exclusive jurisdiction of the CFC. Although HESA claims this case has nothing to do with the contract and instead, pertains to the DoD's failure to comply with its own regulations, the regulation itself "relates to [the] contract," providing that if the "low cost provider" is the contractor, "the contract is to be re-competed or option years exercised, as appropriate." Further, HESA complains "Defendants are not waiting until December 31, 2010 [the expiration of the contract] to implement [the decision to insource]" but rather, "are gradually poaching HESA's pilots and have been conducting job interviews with them since June 21." As such, it is apparent that notwithstanding HESA's assertion to the contrary, this case is essentially one sounding in contract.

2. *Expertise of the Court of Federal Claims*

In the present case, HESA has alleged the government's insourcing decision failed to make 'like comparisons' of cost or otherwise account for the 'full cost of manpower' required by the procedures," thereby denying HESA the ability to be considered for an option or even to compete for the work. Additionally, HESA has

filed an Application for Preliminary Injunction, seeking to enjoin the government "from carrying out their final decision to insource the scope of work involved in Contract No. FA3002-04-0005 that is currently performed by HESA." **Docket No. 5**, App. for Preliminary Injun., pg. 2. Further, as HESA notes in its Application for Preliminary Injunction, the application, and indeed this case, turns on the issue of "the GS classification, for purposes of comparing contractor and government cost of performance, of the flight instructors needed to perform the scope of the work that Defendants have decided to work." *Id*. HESA's exhibits include a Statement of Work and Workload Estimate which are either part of the contract or referred to in the contract. As such, these issues would appear to require the "implement[ation] [of] the Congressional intent to provide a single, uniquely qualified forum for the resolution of contractual disputes" and are better suited in the CFC. *Info. Sys. & Networks Corp.*, 970 F. Supp. at 6(quoting *Ingersoll-Rand*, 780 F.2d at 77).

3. *"Disappointed Bidder"*

Next the Court considers whether the claim was really one of a 'frustrated bidder.' The Court notes initially that defendants have presented alternative arguments, initially claiming jurisdiction is appropriate pursuant to the ADRA because HESA has alleged a bid protest. Whether HESA's claims fall within the purview of the ADRA or the CDA will ultimately be left for the CFC

to decide.  However, generally, a frustrated bidder has no contract upon which to sue the government.  ***See Mgmt. Sci. Am., Inc. v. Pierce***, 598 F.Supp. 223, 227(N.D.Ga. 1984).  In this case, there is an existing contract and HESA, the incumbent contractor, complains the defendants failed to extend this contract despite the one-year option provision.  Arguably then, HESA is not a frustrated bidder.

## B. Nature of the Remedy Requested

Finally, the Court considers the second and final prong of ***Ingersoll-Rand***, the nature of the remedy requested.  HESA argues that because it seeks to enforce compliance with its procedures against the defendants, its remedy lies in this Court rather than the CFC.  In support thereof, HESA cites to ***Ferreiro v. United States***, 501 F.3d 1349, 1353 n.3 (Fed. Cir. 2007)("[a]n order compelling the government to follow its regulations is equitable in nature and is beyond the jurisdiction of the Court of Federal Claims").

Nevertheless, as Judge Lamberth aptly noted, "Congress deliberately intended that contract disputes with the federal government be heard in the Court of Federal Claims, and . . . that only certain relief be available." ***Info. Sys. & Networks Corp.***, 970 F. Supp. at 6; ***see also B & B Trucking, Inc. v. United States Postal Serv.***, 406 F.3d 766, 770 (6th Cir. 2005) (citing ***Ingersoll-Rand Co.***, 780 F.2d at 80) ("holding that a claim for specific

performance of a government contract 'must be resolved by the Claims Court,' even though the Claims Court had no power to grant specific performance"). Here, HESA seeks a declaration that defendants' insourcing decision is unlawful; further, HESA seeks to set aside this decision, and arguably, enforce its contract, including the one-year option. However, HESA could have brought a claim under the Tucker Act to redress its allegation that "Defendants are not waiting until December 31, 2010 [the expiration of the contract] to implement [the decision to insource]" but rather, "are gradually poaching HESA's pilots and have been conducting job interviews with them since June 21" and that HESA was wrongfully denied a one-year option pursuant to the contract. That HESA chose not to do so and to instead seek other relief not afforded by the CDA does not deprive the CFC of jurisdiction as "[a] plaintiff may not sidestep the restrictions of the CDA merely by avoiding a request for damages." *Ingersoll-Rand Co.*, 780 F.2d at 79.

Accordingly, the Court finds that this Court lacks jurisdiction over HESA's claims.

### III.  **Waiver of Sovereign Immunity**

Lastly, HESA argues "this Court may not imply jurisdiction or a waiver of the government's sovereign immunity in the Court of Federal Claims to divest itself of clear federal question jurisdiction and the APA's clear waiver of sovereign immunity in this Court." However, the APA waives sovereign immunity only if there is no other adequate remedy. *Telecare Corp.*, 409 F.3d at

1349. To the extent the CFC has exclusive jurisdiction over all claims pursuant to the ADRA and the CDA, the APA does not waive sovereign immunity. Further, "[t]he plaintiff's title or characterization of its claims is not controlling." *B & B Trucking, Inc.*, 406 F.3d at 769 (quoting *Ingersoll-Rand Co.*, 780 F.2d at 77). "'[A] plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions.'" *Id.* Whether HESA's claims ultimately fall within the purview of the ADRA or the CDA is a decision left to the CFC, which has exclusive jurisdiction in either case.

Because HESA's complaint falls within the jurisdiction of the CFC rather than this Court, defendants' motion to dismiss has merit and will be granted.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that defendants' Motion to Dismiss for Lack of Jurisdiction (Docket No. 7) is **GRANTED;** HESA's application for preliminary injunction and unopposed motion for hearing (Docket Nos. 5 and 6) are **DENIED** without prejudice, and the reference to the United States Magistrate Judge is WITHDRAWN. IT IS FURTHER ORDERED that this case is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. Motions pending, if any, are also DISMISSED.

It is so ORDERED.

SIGNED this _____12_____ day of October.

FRED BIERY
CHIEF UNITED STATES DISTRICT JUDGE